KELLEHER, Judge ad hoc.
The plaintiffs, Siguard Lyles and the Service Fire Insurance Co. of New York, instituted this suit against Joseph Scamardo seeking, on behalf of Siguard Lyles, the recovery of the sum of $50 which represents that portion of the damages sustained by Lyles’ car which was not covered by a policy of collision insurance upon said car issued by the Service Fire Insurance Co.; and the recovery of $715.15 on behalf of the insurer as the subrogee of Lyles. The estimated cost of repairs to the Lyles car amounting to $715.15 was paid by the Service Fire Insurance Co. of New York to Lyles as a consequence of the collision between Lyles’ 1946 Buick sedan and a 1947 Chevrolet sedan driven by the defendant, Joseph Scamardo. The' collision occurred at approximately 11:00 P. M., on December 19, 1951, at the intersection of Dryades and Melpomene Streets in the City of New Orleans.
Defendant, Joseph Scamardo, answered plaintiffs’ suit, denying that his negligence was responsible for the collision and, on the contrary, averring that the accident was occasioned by the negligence of the plaintiff, Siguard Lyles, in failing to keep a proper lookout and in not having his vehicle under control. The defendant, as plaintiff in reconvention, asserted a demand for his damages in the sum of $352.23.
After a trial on the merits the court below adopted the plaintiffs’ theory of the case and rendered judgment in favor of the plaintiff, Service Fire Insurance Co. of New York, in the sum of $715.15. The demand of the plaintiff, Siguard Lyles, was dismissed because it was shown that his automobile was valued at the time of the accident at $900, and that he was paid $715.15 by his insurer, and disposed of the automobile for its salvage value of $200, in consequence whereof on the face of the record he did not sustain any monetary loss. The District Court rejected the re-conventional demand. Defendant and plaintiff in reconvention prosecutes this appeal.
The Buick automobile, driven by plaintiff, immediately preceding the accident, was traveling on Dryades Street in the direction of Canal Street in the traffic lane adjacent to the narrow neutral ground which divides Dryades Street. Defendant, Joseph Scamardo, was driving his 1947 Chevrolet sedan in the same direction but slightly ahead of the Lyles car in the center traffic lane on Dryades Street perhaps twelve feet to the right of the neutral ground strip. When the two vehicles, traveling in the same direction and in parallel courses, neared the intersection of Dryades and Melpomene Streets, the defendant undertook to make a left-hand turn in order to proceed out Melpomene .Street in the direction of Lake Pontchartrain. This maneuver necessitated Scamardo’s crossing the path of the oncoming Lyles’ car, which at that point was perhaps a car length behind the Scamardo car.
Lyles’ testimony is to the effect that when he was confronted with the emergency created by the sudden turning of the Scamardo car directly into his path, he immediately applied his brakes, but without avail. The two cars collided violently in the intersection of Dryades and Melpomene Streets, the right front portion of the Lyles’ car striking the Scamardo car at approximately the center of its left side. The evidence shows that the Scamardo car came to rest at a 'point approximately twenty-eight feet beyond the point of impact.
The Lyles’ car was so heavily damaged that it was considered a total economic loss, and it was therefore sold for its salvage value of $200 without being repaired.
The plaintiffs’ theory of the case was that the proximate cause of the accident was the attempt by the defendant to negotiate a left-hand turn immediately in the path of the Lyles’ car without any signal or warning and when there was an insufficient time interval to safely complete the ma *776 neuver. The defendant contended that he had completed the left-hand turn, and that his car was in a stationary position at an angle to the intersection of Dryades and Melpomene Streets while he waited for the traffic semaphore signal at the intersection to change from réd to green in order that he might proceed on Melpomene Street in the direction of Lake Pontchartrain. Defendant says that while his car was in this position it was struck on its left side by the Lyles car.
The only witnesses to the accident were the drivers of the two vehicles involved. The Court below concluded that the testimony of plaintiff Lyles was entitled to greater weight, and that his version of the accident was corroborated in clear-cut terms by the physical facts. Accordingly it rendered judgment for the plaintiff, Service Fire Insurance Co. of New York, in the sum of $715.15 and rejected defendant’s reconventional demand.
In the case of Fosberg v. Texas Mutual Ins. Co., La.App., 72 So.2d 586, this Court re-affirmed the oft-repeated principle that the execution of a left-hand turn at an intersection is a hazardous maneuver that requires a high degree of care on the part of a motorist undertaking to make such a turn.
In the Fosberg case we said:
“We have repeatedly expressed the opinion that a motorist intending to execute a left turn in an intersection must initially ascertain by careful observation, that the maneuver can be executed safely. Tornabene v. Rau, La.App.1948, 34 So.2d 655; Electric Delivery System v. Lang Co., La.App. 1952, 61 So.2d 607; Martin v. Globe Indemnity Co., La.App.1953, 64 So.2d 257.”
A careful review of the record convinces us that the accident out of which this suit arose was caused by the negligence of the defendant in undertaking to execute a left-hand turn immediately into the path of Lyles’ oncoming car without any signal or warning and when there was an insufficient time interval to enable defendant to safely complete the maneuver.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.